**NOT FOR PUBLICATION**                                                                                  **CLOSED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

---

CHESTER J. GRABOWSKI,

        Plaintiff,                        Civil Action No. 09-6218 (JAP)

      v.                                     **OPINION**

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,

        Defendant.

---

PISANO, District Judge.

      Before the Court is the appeal of Plaintiff Chester J. Grabowski from the final decision of the Commissioner of the Social Security Administration ("Commissioner") denying his request for Disability Insurance Benefits ("DIB"). The Court has jurisdiction to review this matter under 42 U.S.C. §§ 405(g) and 1383(c)(3) and decides this matter without oral argument. *See* Fed. R. Civ. P. 78. For the reasons below, the Court finds that the record provides substantial evidence supporting the Administrative Law Judge's ("ALJ") decision that Plaintiff did not have a severe impairment or combination of impairments, and therefore, he was not disabled within the meaning of the Social Security Act. The Court thus affirms the Commissioner's final decision.

**I.**      **BACKGROUND**

      Plaintiff was born on March 13, 1961, and, at the time of his hearing before the ALJ on April 1, 2009, was 48 years old. (Administrative Record ("R.") at 27.) He is a high school graduate. (R. at 92.) He worked as a machinist until his alleged disability onset

beginning January 27, 1998. (R. at 28.) Due to his work history, his date last insured for DIB was December 31, 2003. (R. at 26.)

### A. Procedural History

Plaintiff filed an application for DIB on April 26, 2007, (R. at 18), alleging that he became disabled on January 27, 1998 due to a leg ulcer, obesity, and deep vein thrombosis, (R. at 88.) The Social Security Administration denied Plaintiff's claims both initially and upon reconsideration. (R. at 39-49.) Upon Plaintiff's request, a hearing was held before ALJ James Andres on April 1, 2009, during which Plaintiff appeared to provide testimony. (R. at 24-37, 52.) On May 1, 2009, ALJ Andres issued a written decision denying Plaintiff's claim. (R. at 15-23.) A request for review by the Appeals Council was denied on October 23, 2009, making the ALJ's decision the Commissioner's final decision on the issue of Plaintiff's request for benefits. (R. at 1-3.)

Thereafter, Plaintiff filed his complaint in this matter alleging that ALJ Andres's decision was not based on substantial evidence and was legally erroneous. Specifically, Plaintiff argues that the ALJ's findings at step two of the requisite five-step analysis were not supported by substantial evidence and were legally erroneous. As to relief, Plaintiff seeks reversal of the Commissioner's Order denying benefits or, in the alternative, remand to the Commissioner.

### B. Factual History

#### 1. Plaintiff's Previous Employment

Plaintiff's past relevant work history includes working as a machinist for at least 15 years before his alleged disability. (R. at 106.) This work entailed standing for eight hours a day, five days a week. (R. at 107.) It also required walking, climbing, lifting, carrying,

stooping, kneeling, crouching, crawling, reaching, and handling small objects. (R. at 107.) Plaintiff had to lift and carry weights in excess of 50 pounds on a daily basis, as needed. (R. at 107.) As Plaintiff explained in his work history report, his job consisted of "heavy industrial work, dragging out heavy steel, jumping on and off [a] forklift [and] constant standing." (R. at 113.)

### 2. Plaintiff's Daily Activities

Plaintiff testified at the hearing that he spends much of his time at home sitting with his legs elevated. (R. at 36.) He doesn't frequent restaurants or the movies, but he takes his dog out to walk it in the yard, and he socializes with neighbors. (R. at 36.) In the questionnaire he completed regarding his daily activities, Plaintiff indicated that during the day he walks the dog, watches television, goes on the Internet, reads the newspaper, and eats. (R. at 98.) In addition, he attends to his alleged disability by taking medication, having his mother bathe and dress his leg, and elevating his leg. (R. at 98.)

### 3. Plaintiff's Medical History

On February 27, 1996, Plaintiff was admitted to Saint Peter's Medical Center in New Brunswick with a chief complaint of severe skin swelling in the right leg for the two prior days. (R. at 132.) He stayed there for fifteen days upon being diagnosed with thrombophlebitis. (R. at 132.) His attending physician, Hans Gandhi, M.D., concluded that Plaintiff was obese, had deep vein thrombosis, and an infection of the veins. (R. at 133.) Because of his obesity and the continuous standing involved in Plaintiff's job, this was anot an unusual case of deep vein thrombosis. (R. at 133.) After his doctors received evidence of blood clots in several veins of his right leg, Plaintiff was aggressively treated with Heparin and later with Coumadin. (R. at 132.) Plaintiff was discharged as "markedly improved"

after responding to the treatment, even though he still exhibited some swelling of the leg. (R. at 132-33.)

From the relevant time period for disability, from January 27, 1998 to December 31, 2003, the only medical records that exist regarding Plaintiff's alleged impairments are notes from Plaintiff's visits to Dr. Gandhi from January 12, 2002 to November 29, 2003. (R. at 171-74.) Many of these notes are illegible; nevertheless, from what the Court can discern, it appears that Dr. Gandhi noted the following: on January 12, 2002, Plaintiff's right leg was swollen; on March 30, 2002, Plaintiff's left leg was sprained; on June 8, 2002, Plaintiff weighed 350-400 pounds and his legs were soft but swollen; on July 20, 2002, Plaintiff's right leg was swollen; on September 9 and October 19, 2002 visits, Plaintiff could not be weighed on the scale; on July 26, 2003, Plaintiff weighed 350 pounds; on August 30, 2003, Plaintiff weighed 350 pounds or more; and on October 18, 2003, Plaintiff weighed 350 pounds or more and his legs were unchanged. (R. at 171-74.)

After the relevant time period, Dr. Gandhi submitted a handwritten note on September 18, 2007, stating that the "patient is totally disabled for any kind of work at present." (R. at 177.) On October 2, 2007 another letter from Dr. Gandhi explained that Plaintiff was disabled prior to December 2003 and "could not do any type of work for one year." (R. at 180.) On July 18, 2008, Dr. Gandhi explained in yet another letter that Plaintiff regularly visited his office every four to eight weeks, that Plaintiff's legs remain swollen and painful because of chronic blood clots in his veins, and that Plaintiff is totally disabled for any kind of work. (R. at 189.)

## II.  LEGAL STANDARD FOR DISABILITY BENEFITS

### A.  <u>Disability Defined</u>

To be eligible for DIB benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A).  A person is disabled for these purposes only if his physical and mental impairments are "of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

### B.  <u>The Five-Step Analysis for Determining Disability</u>

Social Security regulations set forth a five-step, sequential evaluation procedure to determine whether a claimant is disabled.  20 C.F.R. § 404.1520.  For the first two steps, the claimant must establish (1) that he has not engaged in "substantial gainful activity" since the onset of his alleged disability, and (2) that he suffers from a "severe impairment" or "combination of impairments."  20 C.F.R. § 404.1520(b)-(c).  Given that the claimant bears the burden of establishing these first two requirements, his failure to meet this burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there. *Bowen v. Yuckert*, 482 U.S. 137, 146-47 n.5 (1987) (delineating the burdens of proof at each step of the disability determination).

If the claimant satisfies his initial burdens, he must provide evidence that his impairment is equal to or exceeds one of those impairments listed in Appendix 1 of the regulations.  20 C.F.R. § 404.1520(d).  Upon such a showing, he is presumed to be disabled

and is automatically entitled to disability benefits.  *Id*.  If he cannot so demonstrate, the benefit eligibility analysis requires further scrutiny.

The fourth step of the analysis focuses on whether the claimant's residual functional capacity ("RFC") sufficiently permits him to resume his past relevant work.  20 C.F.R. § 404.1520(e)-(f).  Again, the burden lies with the claimant to show that he is unable to perform his past work.  *Fargnoli v. Halter*, 247 F.3d 34, 39 (3d Cir. 2001).  If the claimant is found to be capable to return to his previous line of work, then he is not "disabled" and not entitled to disability benefits.  *Id*.  Should the claimant be unable to return to his previous work, the analysis proceeds to step five.

At step five, the burden shifts to the Commissioner to demonstrate that the claimant can perform other substantial, gainful work.  20 C.F.R. § 404.1520(g); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987).  If the Commissioner cannot satisfy this burden, the claimant is "disabled" and will receive social security benefits.  *Yucker*t, 482 U.S. at 146-47 n.5.

### C. The Record Must Provide Objective Medical Evidence

Under Title II of the Social Security Act, 42 U.S.C. § 401 et seq., a claimant is required to provide objective medical evidence in order to prove his disability.  42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require.").  Accordingly, a plaintiff cannot prove that he is disabled based solely on his subjective complaints of pain and other symptoms.  *See Green v. Schweiker*, 749 F.2d 1066, 1069-70 (3d Cir. 1984) ("[S]ubjective complaints of pain, without more, do not in themselves *constitute* disability.").  A claimant must provide medical findings that show that he has a medically determinable impairment.  *See id*.; *see also* 42

U.S.C. § 423(d)(1)(A) (defining "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment").

Moreover, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 416.929(b); *see Hartranft v. Apfel*, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that the ALJ failed to consider his subjective symptoms when the ALJ had made findings that his subjective symptoms were inconsistent with objective medical evidence and the claimant's hearing testimony); *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992) (denying claimant's benefits where claimant failed to proffer medical findings or signs that he was unable to work).

## III.  STANDARD OF REVIEW

The district court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. § 405(g); 1383(c)(3) ("The final determination of the Commissioner . . . shall be subject to judicial review as provided in section 405(g) . . . ."); *Williams*, 970 F.2d at 1182. "Substantial evidence" means more than "a mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The inquiry is not whether the reviewing court would have made the same determination, but rather whether the Commissioner's conclusion was reasonable. *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Thus, substantial evidence may be slightly less than a preponderance. *Stunkard v. Sec'y*

*of Health & Human Servs.*, 841 F.2d 57, 59 (3d Cir. 1988).  Some types of evidence will be "substantial."  For example,

> '[a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.  Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusions.'

*Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983)  (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)).

The reviewing court must review the evidence in its totality.  See *Daring v. Heckler*, 727 F.2d 64, 70 (3d Cir. 1984).  In doing so, "a court must 'take into account whatever in the record fairly detracts from its weight.'"  *Schonewolf v. Callahan*, 972 F. Supp. 277, 284 (D.N.J. 1997) (quoting *Willibanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988) (internal citation omitted)).  The Commissioner has a corresponding duty to facilitate the court's review: "Where the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence."  *Ogden v. Bowen*, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing *Brewster v. Heckler*, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

*Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (quoting *Arnold v. Sec'y of Health, Educ. & Welfare*, 567 F.2d 258, 259 (4th Cir. 1977)).  Nonetheless, the district court is not

8

"empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." *Williams*, 970 F.2d at 1182 (citing *Early v. Heckler*, 743 F.2d 1002, 1007 (3d Cir. 1984)).

**IV.  THE ALJ's DECISION**

After reviewing all of the evidence in the record, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act.  (R. at 18.)  In his decision, the ALJ properly applied the requisite sequential evaluation and considered all relevant evidence put before him.  (R. at 18-22.)  The decision includes an evaluation of Plaintiff's subjective complaints as well as the various medical reports related to his medical conditions.

At the outset of his five-step analysis, the ALJ found that Plaintiff did not engage in any substantial gainful activity during the period from the alleged onset of his disability through his date last insured and, therefore, step one was satisfied.  (R. at 20.)  At step two, however, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months and, therefore, Plaintiff did not have a severe impairment or combination of impairments.  (R. at 20.)

In his decision, the ALJ determined that Plaintiff had two medically determinable impairments: deep vein thrombosis and obesity.  (R. at 20.)  The ALJ determined that there was no evidence, however, in the legible portion of Dr. Gandhi's progress notes or in the medical record in general to support a finding that Plaintiff's impairments became "severe" prior to 2004.  (R. at 21.)  Although medical records indicate leg and knee problems due to deep vein thrombosis, the ALJ found no mention of any significant resultant limitations in ambulation, extent of pain, or other limitations.  (R. at 21-22.)  The ALJ discounted Dr. Gandhi's statements, from after 2003, that Plaintiff was disabled prior to 2003 as not fully

credible because they did not involve medical assessment but instead were mere conclusions of law. (R. at 22.) Additionally, the ALJ noted that Plaintiff ambulated at the hearing without apparent difficulty and without a cane or assistive device. (R. at 22.) Accordingly, the ALJ found that Plaintiff's impairments were not severe and he was not disabled within the meaning of the Social Security Act. (R. at 22.)

## V.  LEGAL DISCUSSION

On appeal, Plaintiff challenges the ALJ's decision primarily on four grounds: (1) the ALJ's determination that there was no evidence to support a finding of severity was not supported by substantial evidence; (2) the ALJ improperly found Plaintiff's complaints not entirely credible; (3) the ALJ erred in discounting Dr. Gandhi's opinions; and (4) the ALJ erred by not proceeding past step two in the five-step sequential analysis. The Commissioner contends that the ALJ's decision is supported by substantial evidence and therefore should be affirmed.

### A.  **The ALJ's Determination that There Was No Evidence to Support a Finding of Severity**

Plaintiff argues that the ALJ erroneously determined that Plaintiff's impairments did not rise to the level of "severe" as described in the second step of the sequential analysis. First, the Court notes that Plaintiff has the burden to provide evidence demonstrating that he had a medically severe impairment or combination of impairments. *Bowen*, 482 U.S. at 146 n.5. An impairment is not "severe" if it does not significantly limit a person's physical or mental capacity to perform basic work activities. 20 C.F.R. § 404.1521. Basic work activities include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, and handling. *Id.*

Substantial evidence supports the ALJ's finding that Plaintiff did not produce evidence that his impairments significantly limited his capacity to perform basic work activities. Plaintiff's hospital records, from two years before the alleged onset of disability, reveal that Plaintiff was discharged as "markedly improved." (R. at 133.) The legible portions of Dr. Gandhi's medical notes, which are the only records from the period of the alleged disability, describe nothing more significant than Plaintiff's excessive weight, swelling in Plaintiff's legs, and a sprained left leg. (R. at 171-74.) There is, as the ALJ noted, no evidence of any significant resultant limitations. Because there is no evidence that Plaintiff's impairment significantly limited his capacity to perform basic work activities during the relevant time period, the ALJ properly found that Plaintiff's impairments were not severe.

Plaintiff claims that the ALJ should have reached out to Dr. Gandhi for clarification of the illegible portion of his notes. To support this claim, he points to 20 C.F.R. § 404.1512(e), which provides that the ALJ will recontact a treating physician "[w]hen the evidence . . . is inadequate . . . to determine whether [the claimant] is disabled." In this case, however, the evidence was adequate to determine that Plaintiff was not disabled, regardless of whether some of Dr. Gandhi's notes were illegible. Moreover, the Court notes that Plaintiff shoulders the ultimate responsibility to provide evidence that supports his claim. *See* 42 U.S.C.A. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); *Bowen*, 482 U.S. at 146 n.5 ("It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so."). Indeed, the administrative record does in fact

include three letters by Dr. Gandhi seeking to clarify his assessment of Plaintiff's impairments. The ALJ considered these letters and discounted them as conclusory rather than clarifying. *See* Discussion *infra* Part V.C (discussing whether Dr. Gandhi's letters were properly discounted).

### B. The ALJ's Finding That Plaintiff's Subjective Complaints Were Not Entirely Credible during the Relevant Time Period

Plaintiff argues that the ALJ's finding that Plaintiff's subjective complaints were not entirely credible was improper because (1) the ALJ insisted on basing any finding of disability on objective evidence and (2) the ALJ used personal observations to discount Plaintiff's credibility.

The ALJ acted properly when using the lack of objective support for Plaintiff's complaints to find them not credible. In his decision, the ALJ found that the medical evidence did not support Plaintiff's subjective assertions regarding the intensity, persistence, and limiting effects of his symptoms. (R. at 21.) An individual's claims as to pain or symptoms alone are not conclusive; rather there must be medical findings that reveal the existence of a medical condition, which considered with all the evidence, demonstrates a disability. 20 C.F.R. § 404.1529(b). Indeed, Plaintiff's symptoms are determined to diminish his capacity for basic work activities only "to the extent that [the] alleged functional limitations and restrictions due to symptoms, such as pain, can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 CFR § 404.1529(c)(4). Here, there is substantial evidence to support the ALJ's conclusion that Plaintiff's complaints were inconsistent with the medical evidence. First, the Court notes that the bulk of Plaintiff's subjective complaints were made in the present tense, at times well after his date last insured. (*See, e.g.*, R. at 88 (Plaintiff's stating in a 1997 report that

"[I] *am* unable to work. . . .") (emphasis added).) More importantly, there was no medical evidence from the relevant time period to support Plaintiff's allegations of symptoms and limitations severe enough to constitute disability. Due to the want of corroborating medical evidence, the Court finds that the ALJ reasonably concluded that Plaintiff's allegations are not persuasive.

Moreover, Plaintiff's own statements conflict with the extent to which he claims his impairments have limited his ability to work or perform daily activities. While Plaintiff claimed that he was completely unable to work, he reported that he walked his dog, cared for his personal needs, read the newspaper, watched television and went on the Internet on a daily basis. (R. at 98.) Additionally, he reported that he could drive a car and manage his finances. (R. at 101.) Finally, the ALJ noted that Plaintiff appeared to ambulate at the hearing without apparent difficulty and without a cane or assistive device. (R. at 22.) Though Plaintiff objects to the ALJ's personal observations from the hearing, the ALJ is certainly permitted to take such observations into account when determining the credibility of a claimant's testimony, and as the lone factfinder with a firsthand opportunity to observe the claimant, the ALJ is in fact "particularly well-positioned to determine the credibility" of a claimant. *NLRB v. Int'l Brotherhood of Elec. Workers, Local Union No. 98*, 317 Fed. Appx. 269, 275 (3d Cir. 2009); *see also Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 765 (giving "great weight" to ALJ's personal observations in determining the credibility of the claimant at a hearing).

### C. The ALJ's Consideration of Dr. Gandhi's Opinions

Plaintiff objects to the ALJ's finding that Dr. Gandhi's opinions were not fully credible and did not support a finding of disability. Plaintiff claims that Dr. Gandhi's

13

opinions should be given controlling weight under 20 C.F.R. § 404.1527(d)(2), which explains:

> If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.

As explained above, however, the ALJ properly concluded that Plaintiff's claims of his impairments' severity were not well-supported by medical records nor consistent with the other substantial evidence. Therefore, the ALJ was under no duty to accord controlling weight to Dr. Gandhi's opinions.

Furthermore, substantial evidence supports the ALJ's decision that Dr. Gandhi's statements regarding Plaintiff's disability findings were mere conclusions of law. First, the ALJ notes that Dr. Gandhi's statements proffer no medical assessment, but instead are conclusions that amount to an administrative finding dispositive of the case. (R. at 22.) These include such statements as, "[P]atient is totally disabled for any kind of work at present," (R. at 177), "Chester Grabowski was disabled prior to Dec 2003 and could not do any type of work for one year," (R. at 180), and "In my medical assessment he is totally disabled for any kind of work," (R. at 189.) Such dispositive conclusions are reserved exclusively for the ALJ. 20 C.F.R. § 404.1527(e). The ALJ also correctly points out that most of Dr. Gandhi's opinions regard Plaintiff's current disability and thus cannot be applied to support a period of disability prior to January 2004. (R. at 22.) The Court notes that Plaintiff has submitted a new letter from Dr. Gandhi that the ALJ did not have a chance to review. (Docket Entry no. 16). This letter, however, suffers from the same conclusory nature as the other statements and this Court similarly finds them not fully credible.

14

### D.  The ALJ's Decision to End the Analysis at Step Two

Finally, Plaintiff claims that the ALJ erred in ending his analysis at Step Two.  As the Court noted above, because the burden is on Plaintiff to establish that his impairments were "severe" under the Social Security Act, a failure to meet that burden automatically results in a denial of benefits, and the court's inquiry necessarily ends there.  *Bowen*, 482 U.S. at 146-47 n.5 (1987).  Substantial evidence supports the ALJ's conclusions that Plaintiff's impairments were not "severe," and so the ALJ properly ended the inquiry at the second step of the analysis.

## VI. CONCLUSION

For the foregoing reasons, the Court concludes that substantial evidence supports the ALJ's decision denying Plaintiff's request for DIB benefits, and thus affirms the Commissioner's final decision.  An appropriate order accompanies this opinion.


/s/ JOEL A. PISANO
United States District Judge

Date: March 10, 2011